**NOT FOR PUBLICATION**

```
              UNITED STATES DISTRICT COURT
                 DISTRICT OF NEW JERSEY
```

|  |  |  |
|---|---|---|
| DAMIEN STEPHEN DONAHUE, | : | Civil No.: 08-5533 (NLH) |
| Petitioner, | : | |
| v. | : | **O P I N I O N** |
| WARDEN JEFF GRONDOLSKY, | : | |
| Respondent. | : | |

**APPEARANCES:**

    DAMIEN STEPHEN DONAHUE, Petitioner Pro Se
    #10753-041
    F.C.I. Fort Dix
    P.O. Box 2000
    Fort Dix, NJ 08640

    IRENE E. DOWDY, AUSA
    OFFICE OF THE U.S. ATTORNEY
    401 Market Street, Fourth Floor
    P.O. Box 2098
    Camden, New Jersey 08101
    Counsel for Respondent

**HILLMAN**, District Judge

On or about November 6, 2008, petitioner, Damien Stephen Donahue ("Donahue"), filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241, in which he challenges a prison disciplinary proceeding. Donahue asks the Court to expunge the disciplinary finding and sanctions imposed against him by prison officials. The named respondent is FCI Fort Dix Warden Jeff Grondolsky. Respondent Grondolsky answered the

petition on April 13, 2009, and provided a copy of the pertinent administrative record. (Docket Entry No. 6). On May 18, 2009, Donahue filed a traverse or objections to the Warden's answer. (Docket Entry No. 7).

## I. BACKGROUND

Donahue challenges a December 2007 prison disciplinary finding, which resulted in the loss of 207 days good conduct time ("GCT"). He seeks to have the incident report and disciplinary finding expunged, and to restore the 207 days loss of GCT.

Donahue is presently serving a 120-month prison sentence imposed by the United States District Court for the District of Minnesota, on May 30, 2003, on his conviction for conspiracy to possess with intent to distribute in excess of 900 grams of methamphetamine, in violation of 21 U.S.C. §§ 841(b)(1)(A), 846. His projected release date is May 4, 2012, assuming he earns all GCT available to him.

The incident at issue in this habeas petition occurred while Donahue was confined at Federal Prison Camp in Duluth, Minnesota.[1] The Incident Report, number 1674175, states that, on December 3, 2007, at about 12:40 p.m., the reporting officer, Officer S. Hietala, was securing and gathering Donahue's personal property in dorm M room 208, when he found a piece of white tape

---

[1] Donahue was transferred to FCI Fort Dix, on March 11, 2008, where he currently is confined.

on the outside back of Donahue's bottom clothing drawer.  He unfolded the tape and found inside a cellular phone SIMS card.  Donahue was charged with having committed a violation of Code 199 of the Bureau of Prisons' ("BOP") Prohibited Acts, namely, "Conduct which disrupts or interferes with the security or orderly running of the institution" via conduct "most like" a violation of Code 108, "Possession of hazardous tool."  (See Incident Report #1674175 at p. 1, box 9, Exhibit 4 to the Declaration of Tara Moran, Legal Assistant with the BOP, FCI Fort Dix ("Moran Decl."), dated April 2, 2009).

The written Incident Report was provided to Donahue on December 4, 2007, by the Investigating Lieutenant, Lt. J.R. Johansson.  Lt. Johansson also advised Donahue of his rights, which Donahue acknowledged.  Donahue then stated that "he is being set up by [another, identified inmate.  That identified inmate] thinks that [Donahue] is a rat and said that he will get [Donahue] to the joint."  Donahue then stated that he had no witnesses.  Lt. Johansson referred the matter to the Unit Disciplinary Committee ("UDC").  (Id., Incident Report p. 1, boxes 14-16, p.2 boxes 24-27).

On December 5, 2007, Donahue appeared at the UDC hearing, and denied the charge, again stating that he was being set up.  Based on the seriousness of the charge and potential sanctions, namely, the loss of GCT, the matter was referred to the

Disciplinary Hearing Officer ("DHO") for a hearing. Donahue was given written notice of a DHO hearing and a written statement of his rights at that hearing. Donahue further was advised that he could have a staff representative and that he had a right to call witnesses and present documentary evidence at the DHO hearing. Donahue stated that he did not want a staff representative or witnesses. He refused to sign the Notice Forms. (Moran Decl., Ex. 1, pp. 5, 6, Notice of Inmate Rights at Discipline Hearing; Notice of Discipline Hearing Before the DHO).

On December 14, 2007, the DHO Officer conducted a hearing with petitioner present. Donahue denied the charge, but did not present any documentary evidence or witnesses. He did make a statement at the DHO hearing, as follows: "I was at DHO and when I came back, they said they found the card. Staff are in my room every week looking for something. I was set up." The DHO also reviewed the statement of the reporting officer, Donahue's statement to Lt. Johansson, and the statement Donahue made to the UDC. (DHO Report, Ex. 5, pp. 1, 2, Parts I-III, V).

The DHO concluded that Donahue had committed the prohibited conduct as charged and imposed sanctions including the loss of 207 days GCT. (DHO Report, Ex. 5 at pp. 1, 2, Part IV, VI). The DHO further explained the reason for imposing the sanctions:

> Inmates are provided an account number to enter into the Inmate Telephone System (ITS), to ensure that staff can identify inmates using the phone for illicit or illegal purposes. Inmates who circumvent the ITS monitoring by

4

>   using a cell phone have been known to disrupt the safety and
>   security of the institution, by arranging drug-contraband
>   introductions, providing messages related to gang activity,
>   and/or to extort money.  Sanctions were imposed to express
>   the seriousness of the infraction. ... .

(DHO Report, Ex. 5, p. 2, Part VII).

Donahue was advised of his right to appeal the DHO's decision pursuant to the BOP's Administrative Remedy Procedure.  (Id., at Part VIII).  Donahue again did not sign the DHO Report.

Donahue filed an administrative appeal from the DHO decision on or about January 9, 2008.  (Moran Decl., Ex. 2, Regional Administrative Remedy Appeal No. 479721-R1).  The appeal was denied in a response from the Regional Director, D. Scott Dodrill, on May 30, 2008.  The Regional Director found that the record showed substantial compliance with the Program Statement on Inmate Discipline and that the DHO's decision was based on the greater weight of evidence.  (Id.).

Donahue promptly filed a Central Office Administrative Remedy Appeal, on or about June 23, 2008.  The Administrator of National Inmate Appeals likewise supported the DHO's findings and the sanctions imposed in a response dated August 25, 2008.  (Id., Central Office Remedy Appeal No. 479721-A1 and Response).

Thereafter, on or about November 6, 2008, Donahue filed this § 2241 habeas petition.  Respondent admits that Donahue has partially exhausted his administrative remedies before bringing this habeas action.  Respondent argues that Donahue did not raise

his claim that his procedural due process rights were violated in that "information on the SIMS card was not brought forth at the DHO hearing as exculpatory evidence."  However, petitioner's Regional Administrative Remedy Appeal does ask that "a careful, detailed review of this incident be conducted, taking into account the evidence available on the SIMS card."  (Ex. 2.).

## II.   CLAIMS PRESENTED

Donahue claims that he was denied procedural due process in violation of the Fifth Amendment.  Specifically, he alleges that the disciplinary finding was impermissibly based on the application of the constructive possession doctrine because the contraband was found in a common area of his room that any one of 140 inmates could access.  He also complains that his specific request to have the SIMS card examined to provide evidence of his actual innocence has been ignored.

Respondents contend that there was no deprivation of due process and that there was sufficient evidence to support the disciplinary sanctions imposed.

## III.   DISCUSSION

A.   Standard of Review

Donahue seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(3).[2]  That section states that the writ will not be

---

[2] United States Code Title 28, Section 2241, provides in pertinent part:

extended to a prisoner unless "he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).

A pro se pleading is held to less stringent standards than more formal pleadings drafted by lawyers.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Haines v. Kerner, 404 U.S. 519, 520 (1972).  A pro se habeas petition and any supporting submissions must be construed liberally and with a measure of tolerance.  See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir. 1998); Lewis v. Attorney General, 878 F.2d 714, 721-22 (3d Cir. 1989); United States v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969), cert. denied, 399 U.S. 912 (1970).

B.  Applicable Regulations

The Federal Bureau of Prisons ("BOP") has specific guidelines for inmate disciplinary procedures, which are codified at 28 C.F.R. § 541.10 et seq.  Prohibited acts are categorized according to the severity of the conduct.  Code Level 100s are deemed the "Greatest", code level 200s as "High", and proceeding to 400 level codes as "Low Moderate."  The Prohibited Acts Code and Disciplinary Severity Scale is set forth at 28 C.F.R. §

---

(a) Writs of habeas corpus may be granted by the district courts within their respective jurisdictions

(c) The writ of habeas corpus shall not extend to a prisoner unless-   (3) He is in custody in violation of the Constitution or laws or treaties of the United States.

7

541.13 Tables 3-5.  Incident reports are prepared in accordance with § 541.14 and are referred to the UDC for an initial hearing pursuant to § 541.15.

The UDC hearing is typically conducted within three working days of the incident, but may be extended for good cause pursuant to § 541.15(b) and (k).  The UDC may refer the matter to the DHO for further proceedings pursuant to § 541.15(f).  In this case, referral of the incident report to the DHO was mandatory under § 541.13(a)(2), because the charge was designated as a "High" category offense and the UDC does not have the authority to disallow good conduct time.  Disallowance of good conduct time credits for high category offenses, pursuant to Sanction B.1 in Table 3, must be imposed under 28 C.F.R. § 541.13(a)(2).

DHO hearing procedures are set forth at § 541.17.  These procedures require the following: (a) 24-hour advance written notice of charge before inmate's initial appearance before the DHO; this right may be waived, § 541.17(a); (b) an inmate shall be provided a staff representative at the DHO hearing, if so desired, § 541.17(b); (c) an inmate is entitled to make a statement and to present documentary evidence at the DHO hearing; the inmate may also call witnesses to testify on his behalf, but may not himself question the witnesses, § 541.17(c); (d) the inmate is entitled to be present throughout the hearing, except during a period of deliberation or when institutional security

would be jeopardized, § 541.17(d).  The DHO shall prepare a record of the proceedings that documents the advisement of the inmate's rights, the DHO's findings, the DHO's decision, the specific evidence relied upon by the DHO, and a brief statement of the reasons for imposition of sanctions.  28 C.F.R. § 541.17(g).  A written copy of the DHO's decision and disposition must be provided to the inmate ordinarily within 10 days.  <u>Id</u>.

    These procedures are intended to meet or exceed the due process requirements prescribed by <u>Wolff v. McDonnell</u>, 418 U.S. 539 (1974).  <u>See</u> <u>Von Kahl v. Brennan</u>, 855 F. Supp. 1413, 1418 (M.D. Pa. 1994).

C.  <u>Merits of Petitioner's Claims</u>

    1.  *There Was No Denial of Procedural Due Process*

    The Due Process Clause of the Fifth or Fourteenth Amendments provides that liberty interests of a constitutional dimension may not be rescinded without certain procedural protections.  U.S. CONST. amend. XIV.  In <u>Wolff v. McDonnell</u>, <u>supra</u>, the Supreme Court set forth the requirements of due process in prison disciplinary hearings.  An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary

9

evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals."  Wolff, 418 U.S. at 563-71.  An inmate is also entitled to an inmate representative in some cases, and a written decision by the factfinder as to evidence relied upon and findings.  See Von Kahl, 855 F. Supp. at 1418 (citing Wolff, 418 U.S. at 563-72). However, in Wolff, the Supreme Court held that, while prisoners retain certain basic constitutional rights, including procedural due process protections, prison disciplinary hearings are not part of criminal prosecution, and an inmate's rights at such hearings may be curtailed by the demands and realities of the prison environment.  Id. at 556-57; Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

Here, the record shows that Donahue was afforded all the procedural rights to which he was entitled under Wolff and Von Kahl.  However, Donahue argues that his right to due process was violated when the information on the SIMS card was not brought forth at the DHO hearing as exculpatory evidence.

Respondent counters that Donahue never made a request for such information from the SIMS card from any BOP officer involved in the investigation or involved in the disciplinary proceedings before or at his DHO hearing.  He did not ask the Investigating Officer, nor did he make such a request at his UDC hearing or his

10

DHO hearing.  Donahue also did not ask to adjourn his DHO hearing to obtain the information from the SIMS card.

Based on the record, which shows that no such request for information was timely made to anyone involved in the disciplinary proceedings in this matter, this Court finds that there was no procedural due process violation.  Moreover, this Court finds that Donahue's reliance on Brady v. Maryland, 373 U.S. 83 (1963) and Campbell v. Henman, 931 F.2d 1212 (7th Cir. 1991), which applies Brady's requirement of disclosure of exculpatory evidence to prison disciplinary hearings, is misplaced.  Here, there was no exculpatory evidence obtained during the investigation of the incident that was not disclosed to petitioner.  As argued by respondent, even if Donahue had timely and appropriately requested an exploration of the contents of the SIMS card, an inmate does not have a clearly established constitutional right to have scientific testing to establish non-ownership of contraband.  See Von Kahl, 855 F. Supp. at 1423 and n.8 (citing Flanagan v. Warden, 784 F. Supp. 178, 181 (M.D. Pa. 1992), aff'd mem., 6 F.3d 799 (3d Cir. 1993), cert. denied, 510 U.S. 1099 (1994).

Finally, the Regional Director expressly found that the contents of the SIMS card are irrelevant to the charge against Donahue (conduct which disrupts or interferes, most like possession of a hazardous tool) because Donahue was not charged

with, or found to have committed, a violation of any telephone infraction or having a cell phone. Therefore, because the contents of the SIMS card were not used as evidence against Donahue in any way, Donahue did not have any due process right to information that had no part in the disciplinary proceedings against him.

Accordingly, this Court concludes that Donahue has not demonstrated any denial of due process, and his claims in this regard will be denied for lack of merit.

   2. *There Was Sufficient Evidence to Support the Charge*

The Supreme Court has held that procedural due process is not satisfied "unless the findings of the prison disciplinary board are supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454-55 (1985); Young v. Kann, 926 F.2d 1396, 1402-03 (3d Cir. 1991). The Supreme Court has stated:

> Prison disciplinary proceedings take place in a highly charged atmosphere, and prison administrators must often act swiftly on the basis of evidence that might be insufficient in less exigent circumstances. The fundamental fairness guaranteed by the Due Process Clause does not require courts to set aside decisions of prison administrators that have some basis in fact. Revocation of good time credits is not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context.

Hill, 472 U.S. at 456 (internal citations omitted). Moreover, the Court stated: "The Federal Constitution does not require

12

evidence that logically precludes any conclusion but the one reached by the disciplinary board.  Instead, due process in this context requires only that there be some evidence to support the findings made in the disciplinary hearing." Id. at 457.

Here, there is sufficient evidence noted by the DHO in reaching his determination.  The DHO's Report demonstrates that the DHO considered and relied upon the following evidence in its determination that petitioner committed the Prohibited Act 199, conduct which disrupts or interferes with safety and security of the institution most like Code 108, possession of a hazardous tool, based on the fact that the SIMS card was found taped to the back of a petitioner's clothes drawer in his room.

Thus, the DHO's Report plainly shows that it was "not so devoid of evidence that the findings of the [DHO were] without support or otherwise arbitrary." Hill, 472 U.S. at 457.

Indeed, on his administrative appeal, it was found that:

> Your involvement in the incident was based upon the fact that the card was discovered in your assigned area.  Program Statement 5270.07, Inmate Discipline, states, it is an inmate's responsibility to keep his or her area free of contraband.  You had access to the area where the card was found.  You are responsible for checking your area for contraband and for all items found in your assigned areas.  There is no evidence to support your argument that the card was taped to your drawer by another inmate.  Even if other inmates had access to the area in question, you were responsible for items in the particular area where the card was found.

(Response to Regional Administrative Remedy Appeal, Ex. 2).

Donahue's argument that the "constructive possession" doctrine should not have been applied in this case runs counter to the BOP's regulations and policy that instructs all BOP inmates that they are responsible for keeping their assigned living area free from all contraband. As argued by respondent, this policy has been found not to offend due process unless there is exculpatory evidence that renders the inmate's "possession" of the contraband so unreliable under the circumstances that Superintendent v. Hill's "some evidence" standard not met. See Briggs v. Marberry, 2008 WL 554927 **8-9 (W.D. Pa., Feb. 28, 2008); Hamilton v. O'Leary, 976 F.2d 341, 346 (7th Cir. 1992); Okocci v. Klein, 270 F. Supp.2d 603, 613 (E.D. Pa. 2003)(noting that "the doctrine has been extended so far as situations where other inmates claimed responsibility for contraband fond during cell searches"); White v. Kane, 860 F. Supp. 1075, 1079 (E.D. Pa. 1994), aff'd, 52 F.3d 319 (3d Cir. 1994).

Respondent correctly shows that Donahue has not proffered any evidence of unreliability sufficient to undermine the "some evidence" standard. The fact that Donahue shared a cell with three other inmates does not "preclude the application of the constructive possession rule." Briggs, 2008 WL 554927 *9; see also Bailey v. Nash, 2005 WL 2300367 ** 1, 3 (M.D. Pa., Sept. 21, 2005)(denying habeas petition where the weapon was found in the bedpost of an inmate's two-man bunk bed, inmate was assigned to area less than one month, area housed six to ten inmates). Nor

14

does the fact that his cell or room did not have a door or that his cell was searched earlier that day render the evidence unreliable.

Thus, this Court finds that there was more than sufficient evidence to support the DHO finding that Donahue had committed the prohibited act as charged. Donahue failed to proffer any sufficiently credible contradictory evidence other than his self-serving argument that another inmate had set him up. The procedures enunciated in Wolff, supra, were complied with, and there was "some evidence", in accordance with Hill, supra, to support the DHO's finding of guilt. See Sinde v. Gerlinski, 252 F. Supp.2d 144, 150 (M.D. Pa. 2003)("If there is 'some evidence' to support the decision of the hearing examiner, the court must reject any evidentiary challenges by the plaintiff")(quoting Hill, 472 U.S. at 457).

Therefore, there is no basis to expunge the incident report and sanctions imposed because Donahue has not proven that he was denied due process or that there was insufficient evidence to support the disciplinary finding. Accordingly, this habeas petition will be denied for lack of merit.

**CONCLUSION**

Based upon the foregoing, the petition for a writ of habeas corpus under 28 U.S.C. § 2241 will be denied for lack of merit. An appropriate Order accompanies this Opinion.

```
                              /s/ NOEL L. HILLMAN
                              NOEL L. HILLMAN
                              United States District Judge
```

At Camden, New Jersey
Dated: November 2, 2009

16